*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*

¿When you get to the Vessel where did you see the flames?
Captain Rello answered that he did not see flames he only saw white smoke.

**VI.- INTERVIEW WITH MR. ALFREDO AMADOR FAUSTO "FREDDY" CREW MEMBER OF THE VESSEL "TACARI" AND WITNESS OF THE FACTS OCURRED IN OCTOBER 20, 2007.**

Mr. Freddy says that in October 20, approximately at the 7:00 hours he visited Captain Rello on the Vessel "MI BARUR", says that in a period of approximately one hour they drank coffee, smoked and watched the television, leaving approximately at the 8:00 hours of that day because he had a travel programmed for that day, that approximately at the 9:30 hours when he was shopping in the store he hears yelling and sees smoke coming out of the vessel "MI BARUR", runs and grab an extinguisher, he does not remember to what vessel it belonged, and goes onboard the Vessel "MI BARUR".

Freddy says that he could go down until the third step of the stairways that are located following the kitchen that leads to the cabin named VIP and the Dinning table because the smoke was itching and irritating.

"Freddy" says that in the place he saw "Kike" and that Captain Rello arrived minutes later.

**Questions made to Alfredo Amador Fausto "Freddy".**

¿What color was the smoke that came out of the Vessel "MI BARUR"?
Mr. Alfredo Amador answered that the color of the smoke was white.

¿Where were the flames?
Mr. Alfredo Amador answered that he did not see flames.

¿How many cigarettes did you smoke in the Vessel "MI BARUR" in October 20, 2007, when you drank coffee with Captain Rello?
Mr. Alfredo Amador answered three.

*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*

**VII.- INTERVIEW WITH MR. FRANCISCO JAVIER ROBLES CREW MEMBER OF THE VESSEL "SI NOS DEJAN" AND WITNESS OF THE FACTS OCURRED IN OCTOBER 20, 2007.**

Mr. Francisco Javier Robles says that that day he arrived to the wharf number two between 7:50 and the 8:00 hours because he first took his daughter to school, and minutes later he saw Captain Rello, with who after saluting each other chatted with him about 5:00 minutes.

Mr. Francisco Javier Robles says that he took an extinguisher and went onboard the Vessel "MI BARUR" and when passing through the kitchen saw that the smoke was not coming from there, because of that he continued to the stairways, that go to the VIP cabin, and the Dinning table, achieving to go down two or three steps, not being able to go further because the smoke was too itching and without seeing from where the smoke was coming.

**Questions made to Mr. Francisco Javier Robles.**

¿When you arrived did you see flames?
Mr. Francisco Javier Robles answered no, that he did not see flames only smoke.

¿What color was the smoke?
Mr. Francisco Javier Robles answered that the color was white.

**VIII.- INTERVIEW WITH RAUL SANCHEZ CASTRO COMMANDER OF THE FIREFIGHTERS DEPARTMENT OF THE DISTRCT OF LA PAZ, BAJA CALIFORNIA SUR.**

With the objective to know about the intervention of the commander in the fire of the vessel "MI BARUR" I went to the premises of the firefighters department and when asking about the facts under investigation, the commander Raul Castro said:

That he is not authorized to perform investigations, that no one has invited him to perform an investigation of the cause or causes of the fire in the vessel "MI BARUR", that he has not emitted any technical opinion in such regard because, he repeats, he is not authorized to perform investigations.

*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*

I was also informed that a total of 80,000 liters (6 pipes of 10,000 liters and 1 pipe of 20,000 liters) was used to put out the fire, as well as 600 liters of chemical foam (3 pipes of 200 liters).

**IX.- DISTANCE FROM THE PILE OF THE SPACE NUMBER 201 OF THE WHARF NUMBER TWO OF THE MARINA PALMIRA AND THE DOOR NUMBER 32 OF THE WAREHOUSE.**

With the objective to know the distance covered by the Captain Luís Manuel Rello Romero in October 20, 2007, after he left the vessel "MI BARUR" to the warehouse number 32, I proceed to measure the different distances, obtaining the following results:

First distance.- From the pile of the space number 201 to the access door of the wharf number two.

**Distance obtained 129.20 meters.**

Second distance.- From the access door of the wharf to the door of the warehouse number 32.

**Distance obtained 182.20 meters.**

Total distance.- From the pile of the space 201 to the wharf number two to the door of the warehouse number 32

**Distance obtained de 311.40 meters.**

(see photographs 46, 47, 48, 49, 50, 51 and 52).

*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*



Photograph number 46 Pile from the space 201, place where Captain Rello starts his way to the warehouses.




Photograph 47.- Captain Rello reaches the central aisle and turn to the right; also it can be seen the spaces 203 and 205 where Captains Rello says they were docked two vessels at the time of the fire.

*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*



Photograph number 48.- Central aisle through where Captain Rello walks towards the warehouse, in his way salutes and chats with some friends.



Photograph number 49.- Captain Rello goes through the door and exits the wharf number two.

*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*




Photograph number 50.- Façade of Atalanta´s warehouse.



Photograph number 51.- From the access door to the warehouse area.

*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*




Photograph number 52.- Access door to the warehouse number 32.

**X.- TIME DONE BY A PERSON WITH A NORMAL PACE WITHOUT SALUTING AND CHATTING WITH ANYONE.**

With the objective to know the time done by a person with a normal pace, without saluting and chatting with anyone was:

First time of the tour.- From the pile of the space number 201 to the access door of the wharf of the marina Palmira.

**Three minutes, thirty five seconds.**

Second time of the tour.- From the access door of the wharf number two to the door of the wharf number 32.

**Three minutes forty five seconds.**

Total time of the tour.- From the pile of the space number two to the door of the warehouse number 32.

**Seven minutes, twenty seconds.**

**XI.- TIME DONE BY CAPTAIN RELLO FROM THE PILE OF THE SPACE NUMBER 201 TO THE DOOR OF THE WAREHOUSE NUMBER 32.**

With the objective to know the time done by Captain Rello, since he left the Vessel "MI BARUR" departing from the pile of the space number 201 to the door of the warehouse number 32, it was re-constructed the tour made by Captain Rello saluting and chatting with the people whom Captain Rello saluted and chatted in October 20, 2007.

<u>First time of the tour.-</u> From the pile of the space number 201 to the access door of the wharf number two.

**Eleven minutes, thirty six seconds.**

<u>Second time of the tour.-</u> From the access door to the wharf number two to the door of the warehouse number 32.

**Three minutes, forty five seconds.**

<u>Total time of Captain Rellos´ tour.-</u> From the pile of the space number 201 to the door of the warehouse number 32.

**Fifteen minutes twenty one seconds.**

**XII.- YACHT CLUB PALMIRA.**
**La Paz Baja California sur, México.**

Palmira´s marine according with its information and propaganda is an establishment that has the following services:

- Housing.
- Services.
- Reservations.
- Location.
- Premises.

*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*

Palmira´s marine has a depth of 12 feet and has a capacity of 189 spaces in service, for vessels from 22 to 130 feet of length.

Has fuel and diesel in the wharf of fuel and refill of tanks of propane gas, bombing of tanks, electricity of 130/110 amperes and 250/50 amperes, a triphase of 100 amperes available in some spaces, fax service and cable television.

When realizing the tour in the premises of Palmira marine, it was observed a parking lot, stores and restaurants, where the general public have access, this area has security personnel whom tours the area by foot and bike (see photograph number 53)



Photograph number 53, View of the area of restaurants, stores, watched by private security personnel.

*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*

Also it was observed a second area comprise by the wharfs, observing that each wharf has an access door, to enter a metallic key or a card have to be used, in each door exists a security camera, and finding security personnel doing their tour in the wharfs (see photographs 54, 55 and 56).



Photograph number 54.- Private security personnel doing foot tours in the wharfs.

Standing at the access door of the wharf number two, I had in sight the security camera, which according to its position and orientation watch the entrance and exit of the wharf (see photograph 55)

*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*




Photograph number 55.- Access door to the wharf number two and to have access a metallic key or card is needed.



Photograph number 56.- Access door number two has a security camera for the entrance and exit of people.

*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*

## CONSIDERATIONS.

1.- That the fire of the Vessel "MI BARUR" started approximately at the 9:30 hours in the morning, what discards that the fire was provoked, because in the wharf number two already existed personnel of neighbor vessels working as well as continued vigilance.

2.- That due the action of the fire the upper part of the Vessel disappeared, what indicates that the fire started beneath the upper part of the vessel.

3.- That the front part of the prow´s deck shows a greater action of fire in the port side (left side), what indicates that the development of the fire was greater in the port side (left side), opposite to the captain´s cabin.

4.-That in the area of the crew´s cabin all the deck disappeared, what indicates a greater presence of fire in the port side (left side) than in the starboard side (right side).

5.- That in the area of the captain´s cabin part of the prow´s deck from the starboard side, remained, what indicates lesser presence of fire in the starboard side (right side) in relation with the port side (left side) where the hole deck disappeared.

6.-That the door of the area of showers of the crew´s cabin shows greater damages caused by fire than the door of the area of shower of the captain´s cabin. That indicates a greater presence of fire in the crew´s cabin than in the captain´s cabin.

7.- That the carpet of the captain´s cabin does not show damages caused by fire, and it remains clean without damages, what indicates that the fire does not have its origin in the polyurethane mattress of the captain´s bed because if this material had ignited at the beginning it would have caused damages by fire to the carpet, or at least, substantial stains.

8.- That the carpet of the crew´s cabin shows damages caused by fire and that this damages caused by fire have a burnt pattern in a direction from

*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*

stern to prow (rear to front) and port to starboard (left to right) what indicates that the burnt pattern of this carpet is the direction of the fire spreading what indicates that the fire that affected this room came from the adjacent room named dinning room or dinning table, consequently is discarded that the fire started in this room.

9.- That the carpet of the aisle that lead to the cabins of the crew and the captain shows damages caused by fire with a burnt pattern from port to starboard (left to right) and from stern to prow (rear to front) what determines that the fire that affected this section came from the room named crew´s cabin and from the dinning room (dinning table).

10.- That the wall that divides the cabin named VIP and the stairways that come down from the kitchen show a burnt pattern from top to bottom, what indicates the presence of fire in the upper part what moves downwards.

11.- That the furniture that is located next to the bed of the cabin named VIP shows a burnt pattern from top to bottom, what indicates the presence of fire in the upper part which moves from port to starboard (left to right).

12.- That the furniture of the dinning room area also known as Dinning table, show a burnt pattern from top to bottom and a direction from stern to prow (rear to front), what indicates that the presence of fire moves initially from the upper part of that room.

13.- That the wall which is behind the bed-head of the bed of the cabin named VIP, same wall that is adjacent to the dinning room (dinning table) shows a mark of fire in a swing form, with a burnt pattern in a radial form, from top to bottom, having its epicenter in the top central part

14.- That the cabin named VIP and the Dinning room also known as the Dinning table are located approximately one meter lower than the level of

*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*

the floor of the crew and captains cabins, what indicates that its space of oxygenation is very reduced, producing the presence of fire without flame.

15.- That the soffit or roof of the VIP cabin and the dinning room Dinning table, which at the same time is the kitchen´s floor, collapsed, due the weakening of the affected material because of the heat concentration in its inferior part.

16.- That the kitchen´s floor in its upper part does not show damages caused by fire, and in its interior part shows carbonization, being the carbonization an indicative that the heat was principally concentrated in this area.

17.- That the distribution panel or loading centre is completely destroyed, its damage by the action of the fire from top to bottom, what indicates that the fire came from the upper part.

18.- That in the areas of the distribution panel and machinery there were found a great variety of electric conductive cables cut by a sharp instrument and of pressure, what indicates that samples or traces related to the case under investigation were taken.

19.- That the elements or traces removed by sharp instruments of pressure, were not seen physically nor in photographs.

20.- That amongst the remnants located in the dockyard of Atalanta there were found electric conductive cables with short-circuit characteristics, what indicates that the fire may have been caused by a short-circuit.

21.- That the burnt pattern changes its direction in the middle part of the vessel, precisely in the room named crew's lounge, being this point where it goes in two directions, one trajectory to the stern (rear) and the other one to the prow (front)

22.- That the cabins located in the area of stern shows a burnt pattern from top to bottom and from the middle part of the vessel to the stern, what confirms the second trajectory of the fire.

23.- That it was not possible to have in sight the "setinas" (lowest part of the boat), because their access was difficult.

24.- That the door of the compartment of the prow´s deck could be confused with a porthole.

25.- That Captain Rello before leaving the Vessel "MI BARUR" closed, and only the kitchen´s door open and considering that the wharf has lots of security, it is discarded the introduction of any person that would have provoked the fire.

26.- That Captain Rello smokes in the principal saloon, being so why it is discarded that the fire could have been provoked by a cigarette end in the captain´s cabin, crew´s cabin, VIP cabin or crew´s lounge.

27.- That Captain Rello before leaving the vessel does cleaning tasks, which indicates he is a disciplined, tidy, cautious and careful person.

28.- That Captain Rello before leaving the vessel turns off the television, the coffee machine, the lights and the air extractor, what indicates that he is a disciplined, tidy, cautious and careful person.

29.- That Captain Rello leaves the vessel, walks through the wharf towards the exit, and in his way salutes and chats with acquaintances doing an a approximate time of 11 minutes 36 seconds, since he leaves the vessel until he reaches the door of the wharf, enough time note any smoke coming out from the vessel, not being so until the 9:30, what indicates that the fire was not provoked and it was no due a negligence or lack of caution.

30.-That the time he takes to reach the access door of the wharf and exit, since he leaves the Vessel "MI BARUR" is approximately eleven minutes thirty six seconds. What indicates that the Captain Rello was not in a rush of leaving and be distant of the vessel, due that the normal time that takes

to a person in a normal pace without chatting and saluting for leaving the wharf from the place where the vessel at issue was located, is 3 minutes 37 seconds.

31.- That the time that Captain Rello takes to reach the door of the warehouse number 32 since he left the vessel "MI BARUR" is approximately 15 minutes 21 seconds, considering the normal time of the tour.

32.- Since Captain Rello left the vessel "MI BARUR" and the first yells of alert about the fire of a vessel were heard, it has already passed approximately 1 hour 20 minutes.

33.- That Alfredo Amador Fausto "Freddy" and Francisco Javier Robles "Kike", say that they only were able to get until the second and third step of the stairway following the kitchen, because the smoke was very itching, what indicate that the smoke came from beneath the kitchen, consequently the fire was in its first stages.

34.- That Alfredo Amador Fausto "Freddy", Francisco Javier Robles y el Captain Rello say that they did not see flames, but white smoke, what indicates that it was in incipient fire.

35.- That there is no video of the fire from Palmira marine.

36.- That the access to the wharf number two of the Palmira marine is controlled by a metallic key or a card, what guarantees the safety of the people who access the wharf, avoiding the presence of estrangers.

37.- That there is vigilance through security personnel by foot, in the wharf number two, by private security personnel, what guarantees the safety of the people who access the wharf, avoiding the presence of strangers.

38.- That the Vessel "MI BARUR" had to be moved towards the wharf number 7 also known as the breakwater wharf, located in front of the spaces 201 y 202, to avoid other vessels to be affected principally those located in spaces 203 and 205, what indicates the presence of people near the space where the vessel "MI BARUR" was docked.

*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*

39.- That is discarded that the fire has had its origin in the mattresses of the beds of the cabins of the captain and the crew, because due that the material is polyurethane it would have produced black-colored smoke, and what the witnesses says is that the smoke was white.

40.- That is discarded that the fire was provoked or intentional, because there were not found multiple points of origin in questionable places, and no evidence to support such a conclusion was found.

Due the aforementioned, I reached the following:

## CONCLUSIONS

**First.-** In accordance to all the damages caused by the fire and the burnt pattern, the origin of the fire did not take place in the captain´s cabin

**Second.-** In accordance to all the damages caused by the fire and the burnt pattern, the origin of the fire did not take place in the crew´s cabin

**Third.-** In accordance to all the damages caused by the fire and the burnt pattern, the origin of the fire took place in the dinning room area, also known as the crew's lounge in the roof or soffit.

**Fourth.-** In accordance to the characteristics of the damages caused by the fire, in the vessel "MI BARUR" in October 20, 2007, at the 9:30 hours, it was not intentional, considering the arguments contained in this study.

**Fourth.-** In accordance to the circumstances and characteristics in which the vessel "MI BARUR" was found, the cause of the fire is undetermined, without the possibility of discarding that it was caused by a short circuit.

What I make of your knowledge for corresponding legal and administrative endings and effects.

**Yours respectfully,**

**Ing. Mario Ricardo Saldaña Nolasco**
**Expert in FIRE and explosions.**

*Ing. Mario Ricardo Saldaña Nolasco.*
*Perito en Incendios y Explosivos.*

**CAMERA.**

In the investigation of the vessel "MI BARUR" it was use the digital camera Brand: Sony, Model: DSC-W100 de 8.1 Mega pixels.
Lens: Carl Zeiss, Vario-Tessar, 2.8-5.2/7.9-23.7
High sensitivity iso 1250 2.5'' LCD Monitor Strong Flash up to 10.5 m

**BIBLIOGRAPHY.**

The specialized bibliography used for the proper analysis of this Report was the following:

**1.- "Guía para las investigaciones sobre incendios y explosiones"**
Edición: 1995. NFPA Nacional Fire Protection Association.
Editorial: MAPFRE.

**2.- "Seguridad de incendios en almacenes y depósitos de mercancías"**
Fundación: MAPFRE. Editorial: MAPFRE.

**3.- "Investigación del origen y causas de los incendios"**
Autores: Calvin C. Phillipps y David A. Mcfadden.
Edicion: 1984, Editorial MAPFRE.

**4.- "Incendios intencionales y laboratorio del fuego"**
Autor: Ing. Sergio Pineda Sicardo. Editado por La Procuraduría General de la Republica Edicion: 1996.

**5.- "Una guia practica en la investigación de los incendios intencionales"**
Autor: Juan A. Benavides Flores. Edicion: 2000
Editorial: El Cosario.

**6.- "Incendios"**
Fascículo: 7 Autor: Ricardo Cicero Betancourt.
Edicion: 1998 Editorial: Centro nacional de Prevención de Desastres.

**7.- "Guia para la Investigación de Incendios y Explosiones",**
Autor: Daniel L. Churchward . Edicion: 2008. Editorial: NFPA 921