Rebecca R. Weinreich, SB# 155684
E-Mail: weinreich@lbbslaw.com
Stephen V. Kovarik, SB# 184656
E-Mail: kovarik@lbbslaw.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 250-1800
Facsimile: (213) 250-7900

Attorneys for Plaintiff and Counterdefendant
New Hampshire Insurance Company

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| New Hampshire Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Mi Barur, Inc.,<br><br>Defendant. | CASE NO. 08 CV 0443 BEN POR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NEW HAMPSHIRE INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** |
| Mi Barur, Inc., Arsenio Farell and Norma Farell,<br><br>Counter-Claimants,<br><br>v.<br><br>New Hampshire Insurance Company,<br><br>Counter-Defendant. | Date: September 22, 2008<br>Time: 10:30 a.m.<br>Courtroom: 3<br>The Honorable Roger T. Benitez |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION . . . . . 1

II. SUMMARY OF ARGUMENT . . . . . 1

III. STATEMENT OF THE CASE . . . . . 3

IV. LEGAL ARGUMENT . . . . . 4

A. Choice of Law . . . . . 4

B. Promissory Fraud Cannot Be Based Upon a Mere Breach of Contract . . . . 4

C. The Negligent Misrepresentation Claim Fails as a Matter of Law . . . . . 7

D. Counterclaimants' "Negligent Salvage" Cause of Action Cannot Survive Because The Claim is Based upon Breach of Contract, Not Tort . . 9

E. The Claims by the Farells are Factually and Legally Flawed Because They Are Not Insureds Under the New Hampshire Policy . . . . . 12

1. The Terms of the Policy Take Precedence Over Conclusory Allegations in the Counterclaim . . . . . 12

2. Only Insureds Under the Policy May Assert a Cause of Action Against New Hampshire . . . . . 12

a. As Shareholders in Mi Barur, Inc., the Farells Lack Standing to Sue the Corporation's Insurer . . . . . 12

b. The Farells Are Not Third-Party Beneficiaries . . . . . 13

c. The Farells Do Not Qualify as "Insureds" . . . . . 14

F. The Libel and Slander Claims Must be Dismissed . . . . . 17

1. The Standard . . . . . 17

2. The Alleged Statements Are Privileged Because They Are Between Persons Who Are Interested in the Loss of the Mi Barur . . 18

3. The Alleged Statements Do Not Defame the Farells . . . . . 21

a. There is No Statement by New Hampshire That Documentation for the Mi Barur Was "Illegal" as Alleged in the Eighth Cause of Action . . . . . 21

b. Statements Regarding the Arson and the Comment by Mr. Schwede are Not "Of or Concerning" the Farells . . . . . 22

(1). The Declination Letter Submitted in Support of the Eighth Cause of Action for Slander Contains No Statements Attributing the Arson to Either of the Farells . . . . . 22

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

(2). The Statement Supporting the Ninth Cause of Action For Slander Does Not Reference Either of the Farells . . . . . . . . . . 24

(a). The Statement Refers to "He," Not "She" or Mrs. Farell . . . . . . . . . . 24

(b). The Statement is Not Sufficiently Specific as to Who it Refers . . . . . . . . . . 24

V. CONCLUSION . . . . . . . . . . 25

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

# TABLE OF AUTHORITIES

**Federal Cases**

*Aceves v. Allstate Insurance Co.*, 68 F.3d 1160 (9th Cir. 1995) . . . . . 11

*Adams v. Allstate Insurance Co.*, 187 F.Supp.2d 1207 (C.D. Cal. 2002) . . . . . 20

*Bower v. Jones*, 978 F.2d 1004 (7th Cir. 1992) . . . . . 6

*Carillo v. Nationwide Mutual Fire Insurance Co.*, 2007 U.S.Dist. LEXIS 47919 (N.D. Cal. June 25, 2007) . . . . . 10

*Caso v. Hartford Casualty Insurance Co.*, 2008 U.S.Dist. LEXIS 36428 (E.D. Cal. May 2, 2008) . . . . . 10

*Cigna Prop. & Casualty Insurance Co. v. Polaris Pictures Corp.*, 159 F.3d 412 (9th Cir. 1998) . . . . . 21

*Continental Insurance Co. v. Muradyan*, 2003 U.S.Dist. LEXIS 18643 (C.D. Cal. 2003) . . . . . 11

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) . . . . . 5

*DeMarco v. DepoTech Corp.*, 149 F.Supp.2d 1212 (S.D. Cal. 2001) . . . . . 7

*Everett Associates v. Transcontinental Insurance Co.*, 159 F.Supp.2d 1196 (N.D. Cal. 2001) . . . . . 10

*Fanucchi & Limi Farms v. United Agriculture Products*, 414 F.3d 1075 (9th Cir. 2005) . . . . . 6

*In re Glenfed, Inc. Sec. Litigation*, 42 F.3d 1541 (9th Cir. 1994) . . . . . 5, 7

*Guebara v. Allstate Insurance Co.*, 237 F.3d 987 (9th Cir. 2001) . . . . . 11

*Kacludis v. GTE Sprint Communications Corp.*, 806 F.Supp. 866 (N.D. Cal. 1992) . . . . . 20

*Moore v. Brewster*, 96 F.3d 1240 (9th Cir. 1996) . . . . . 5

*National-Ben Franklin Insurance Co. v. Levernier*, 280 F.Supp.2d 851 (E.D. Wis. 2003) . . . . . 16

*New Hampshire Insurance Co. v. C'est Moi, Inc.*, 519 F.3d 937 (9th Cir. 2008) . . . . . 4

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

*Orth v. Universal Underwriters Insurance Co.*,
284 F.2d 857 (9th Cir. 1960) . . . . . 15, 16

*Price v. Highland Community Bank*,
722 F.Supp. 454 (N.D. Ill. 1989) . . . . . 6

*Richardson v. Reliance National Indemnity Co.*,
2000 U.S.Dist. LEXIS 2838 (N.D. Cal. March 9, 2000) . . . . . 6

*Smith v. Allstate Insurance Co.*,
160 F.Supp.2d 1150 (S.D. Cal. 2001) . . . . . 6

*In re Stac Electrics Sec. Litigation*,
89 F.3d 1399 (9th Cir. 1996) . . . . . 12

*Stanford Ranch v. Maryland Casualty Co.*,
89 F.3d 618 (9th Cir. 1996) . . . . . 15

*Tento International, Inc. v. State Farm Fire & Casualty Co.*,
222 F.3d 660 (9th Cir. 2000) . . . . . 10

*Thompson v. Illinois Department of Prof. Reg*,
300 F.3d 750 (7th Cir. 2002) . . . . . 12, 22, 25

*USF Insurance Co. v. Clarendon America Insurance Co.*,
452 F.Supp.2d 972 (C.D. Cal. 2006) . . . . . 17

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) . . . . . 5, 7

*Yourish v. California Amplifier*,
191 F.3d 983 (9th Cir. 1999) . . . . . 7

**State Cases**

*ACL Technologies, Inc. v. Northbrook*,
17 Cal.App.4th 1773 (1993) . . . . . 15

*Aas v. Superior Ct.*,
24 Cal.4th 627 (2000) . . . . . 9

*Armstrong World Industrial, Inc. v. Aetna Casualty & Surety Co.*,
45 Cal.App.4th 1 (1996) . . . . . 17

*Bank of the West v. Superior Ct.*,
2 Cal.4th 1254 (1992) . . . . . 15

*Bay Cities Paving & Grading, Inc. v. Lawyer's Mutual Insurance Co.*,
5 Cal.4th 854 (1997) . . . . . 15

*Becker v. IRM Corp.*,
38 Cal.3d 454 (1985) . . . . . 9

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

*Benavides v. State Farm General Insurance Co.*,
136 Cal.App.4th 1241 (2006) .......... 9, 10

*Bierbower v. FHP, Inc.*,
70 Cal.App.4th 1 (1999) .......... 20

*Blatty v. New York Times Co.*,
42 Cal.3d 1033 (1986) .......... 22

*C & H Foods Co. v. Hartford Insurance Co.*,
163 Cal.App.3d 1055 (1984) .......... 13

*California Casualty Insurance Co. v. Northland Insurance Co.*,
48 Cal.App.4th 1682 (1993) .......... 15

*Castro v. Fireman's Fund American Life Insurance Co.*,
206 Cal.App.3d 1114 (1988) .......... 15

*Century Surety Co. v. Crosby Insurance, Inc.*,
124 Cal.App.4th 116 (2004) .......... 8

*Cicone v. URS Corp.*,
183 Cal.App.3d 194 (1986) .......... 8

*Erlich v. Menezes*,
21 Cal.4th 543 (1999) .......... 9

*Ferlauto v. Hamsher*,
74 Cal.App.4th 1394 (1999) .......... 22

*Fraley v. Allstate Insurance Co.*,
81 Cal.App.4th 1282 (2000) .......... 20

*Frontier Oil Corp. v. RLI Insurance Co.*,
153 Cal.App.4th 1436 (2007) .......... 4

*Hatchwell v. Blue Shield of California*,
198 Cal.App.3d 1027 (1988) .......... 13

*InfiNet Marketing Services, Inc. v. American Motorist Insurance Co.*,
150 Cal.App.4th 168 (2007) .......... 13

*Institute of Athletic Motivation v. University of Illinois*,
114 Cal.App.3d 1 (1980) .......... 19

*Jones v. Aetna Casualty & Surety Co.*,
26 Cal.App.4th 1717 (1994) .......... 13

*Love v. Fire Insurance Exchange*,
221 Cal.App.3d 1136 (1990) .......... 11, 20

*Lundquist v. Reusser*,
7 Cal.4th 1193 (1994) .......... 18, 19, 20

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

*Magpali v. Farmers Group, Inc.*,
48 Cal.App.4th 471 (1996) . . . . . 5, 6

*Quan v. Truck Insurance Exchange*,
67 Cal.App.4th 583 (1998) . . . . . 17

*Reliance Insurance Co. v. Alan*,
222 Cal.App.3d 702 (1990) . . . . . 16

*Robomatic, Inc. v. Vetco Offshore*,
225 Cal.App.3d 270 (1990) . . . . . 20

*Sanborn v. Chronicle Public Co.*,
18 Cal.3d 406 (1976) . . . . . 19

*Sanchez v. Lindsey Morton Claims Services, Inc.*,
72 Cal.App.4th 249 (1999) . . . . . 10

*Scott v. Continental Insurance Co.*,
44 Cal.App.4th 24 (1996) . . . . . 15

*Scott v. McDonnell Douglas Corp.*,
37 Cal.App.3d 277 (1974) . . . . . 17

*Seretti v. Superior National Insurance Co.*,
71 Cal.App.4th 920 (1999) . . . . . 12

*Tan Jay International v. Canadian Indemnity Co.*,
198 Cal.App.3d 695 (1988) . . . . . 13

*Tarmann v. State Farm Mutual Automobile Insurance Co.*,
2 Cal.App.4th 153 (1991) . . . . . 5

*Tenzer v. Superscope, Inc.*,
39 Cal.3d 18 (1985) . . . . . 6

*Waller v. Truck Insurance Exch.*,
11 Cal.4th 1 (1995) . . . . . 15, 17

*Wilhelm v. Pray, Price, Williams & Russell*,
186 Cal.App.3d 1324 (1986) . . . . . 9

*Wilkins v. NBC*,
71 Cal.App.4th 1066 (1999) . . . . . 5

**State Statutes**

California Civil Code:

§ 44 . . . . . 18

§ 45 . . . . . 18

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

§ 46 . . . . . . . . . . 18

§ 47 . . . . . . . . . . 2, 17, 18

§ 48 . . . . . . . . . . 20

§ 1646 . . . . . . . . . . 4

§ 1710(2) . . . . . . . . . . 8

California Harbor & Navigation Code:

§ 651 . . . . . . . . . . 15

California Insurance Code:

§ 11580.06 . . . . . . . . . . 16

**Miscellaneous**

Croskey, *et al.*, *California Practice Guide, Insurance Litigation* (The Rutter Group 2007) . . . . . . . . . . 11

5 Wright & Miller, *Federal Practice & Procedure, Civil 3d* §1245 (2008) . . . . . . 18


LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

## I. INTRODUCTION

New Hampshire Insurance Company ("New Hampshire") submits this memorandum in support of its motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss (1) the Third, Fourth and Fifth causes of action to the First Amended Counterclaim ("counterclaim") filed by Mi Barur, Inc., Arsenio Farell and Norma Farell (collectively, "Counterclaimants"), and (2) the First through Ninth Causes of Action to the extent they are brought individually by Arsenio Farell and Norma Farell (the "Farells"), on the grounds that they fail to state a claim upon which relief can be granted.

## II. SUMMARY OF ARGUMENT

This action involves whether the loss of the 92 ft. motor yacht "Mi Barur" as a result of arson is covered under a marine insurance policy issued by New Hampshire to a corporation named Mi Barur, Inc. Counterclaimants assert eight causes of action against New Hampshire: (1) Breach of Insurance Contract, (2) Breach of the Implied Covenant of Good Faith and Fair Dealing ("bad faith"), (3) Promissory Fraud - No Intent to Perform, (4) Negligent Misrepresentation, (5) Negligent Salvage, (6) Intentional Infliction of Emotional Distress, (7) Negligent Infliction of Emotional Distress, (8) Libel, and (9) Slander. The First through Fifth Causes of Action are brought jointly by Mi Barur, Inc. and the Farells. The Sixth through Ninth Causes of action are brought solely by the Farells.

The Third Cause of Action for "promissory fraud" is flawed because it is based upon the assertion that, at the time the New Hampshire insurance policy was issued, the company had no intention of paying any claims under the policy. California courts have found that claims against an insurer based simply upon an original promise to insure coupled with a subsequent failure to perform are "specious" because they would turn every breach of contract action into a fraud claim by simply alleging that a party never intended to keep its promise.

The Fourth Cause of Action for "negligent misrepresentation" fails for the same reason as the fraud claim because it too simply alleges that New Hampshire never intended to pay claims under its policies. The claim is also defective because it fails to plead each of the elements to such a cause of action.

The Fifth Cause of Action for "negligent salvage" fails because, under California law, a person may not recover in tort for an insurer's breach of its contractual obligations, including the obligation to investigate a claim. The only tort remedy available in the insurance context is for "bad faith," not negligence.

The claims raised by Arsenio Farell and Norma Farell, individually, in the First through Seventh Causes of Action are fundamentally flawed because the Farells are neither insureds nor beneficiaries under the New Hampshire policy. Rather, they are merely shareholders in Mi Barur, Inc., the named insured under the policy and the owner of the Mi Barur. Under California law, shareholders lack standing to assert a claim against the corporation's insurer because there is no privity of contract.

The Eighth and Ninth Causes of Action for libel and slander asserted solely by the Farells fail as a matter of law because they are based upon communications relating to the loss of the Mi Barur and issues regarding insurance coverage for the loss that were allegedly made by New Hampshire's representatives to Mi Barur, Inc.'s president and to its insurance broker. Such communications are protected by the "common interest privilege" codified in California Civil Code section 47, which protects statements to others on a matter of common interest. The libel and slander claims are also deficient because the statements upon which they are based are either not defamatory or do not attribute the arson to Farells and, therefore, do not meet the First Amendment requirement that a defamatory statement specifically refer to or be "of and concerning" the claimants.

For these reasons, New Hampshire requests that the motion be granted.

/ / /

/ / /

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

## III. STATEMENT OF THE CASE

On March 10, 2008, New Hampshire filed a complaint against its insured, Mi Barur, Inc., seeking a declaration of the parties' rights and obligations under New Hampshire policy YM 868-56-66 for the total loss of the Mi Barur after an October 20, 2007 fire in La Paz, Mexico, that was the result of arson. (Ex. A.)[1/] Mi Barur, Inc. answered the complaint on June 20, 2008. (Ex. B.) That same day, Mi Barur, Inc. and its shareholders, Arsenio Farell and Norma Farell filed a counterclaim against New Hampshire. On July 10, 2008, New Hampshire moved to dismiss certain of those claims pursuant to Rule 12(b)(6). In a futile effort to cure the defects in their pleadings, a First Amended Counterclaim was filed on August 5, 2008. (Ex. C.)

Counterclaimants admit in their answer or allege in the counterclaim that:

1. Mi Barur, Inc. is the owner of the motor yacht Mi Barur. (Ex. A, p. 2, ¶ 4; Ex. B, p. 52, ¶ 4; Ex. C, p. 67:20-21.)
2. All the shares of Mi Barur, Inc. are owned by Arsenio Farell and Norma Farell. (Ex. C, p. 61, ¶ 3.)
3. Michael Hallmark is the holder of the primary corporate offices of Mi Barur, Inc. (Ex. A, p. 2, ¶ 6; Ex. B, p. 52, ¶ 6; Ex. C, p. 61:10-13.)
4. New Hampshire issued policy YM 868-56-66 to named insured Mi Barur, Inc., with effective dates of September 23, 2007 to September 23, 2008 (the "New Hampshire policy"), a true and correct copy of which is attached to the Complaint and incorporated into the counterclaim. (Ex. A, pp. 16-45; Ex. C, p. 61:5-7, ¶1 n.1.)
5. The New Hampshire policy was issued to Mi Barur, Inc. at its San Diego, California address. (Ex. A, p. 16.)
6. The New Hampshire policy was purchased by Mi Barur, Inc. through its insurance broker, Henry Medina, of Mariner's General Insurance. (Ex.

---

[1/] References are to the exhibits attached to the Notice of Lodgment of Exhibits filed in support of this motion.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

A, p. 16; Ex. C, pp. 68:7-74:28, 201:21-202:7.)

7. The Mi Barur was a total loss as the result of an October 20, 2007 fire. (Ex. C, pp. 75:11-76:14.)

8. Captain Rello, the captain of the vessel, left the Mi Barur about one hour before the fire was reported. (Ex. C, p. 75:15-17.)

9. The cause and origin of the fire was investigated on New Hampshire's behalf by Arthur J. Murphy of Maze Consultants & Investigations, Inc. (Ex. A, p. 5, ¶ 24; Ex. B, p. 54, ¶ 24; Ex. C, pp. 77:22-25, 346.)

10. In a March 10, 2008 letter, New Hampshire denied the claim based upon its expert's conclusion that the fire was the result of arson and the company's understanding that Captain Rello was the last person to leave the vessel before the fire. (Ex. C, pp. 346-347.) New Hampshire also reserved the right to deny coverage based upon the misrepresentations made by the insured when obtaining coverage. (Ex. C, pp. 347-348.)

## IV. LEGAL ARGUMENT

### A. Choice of Law

Because this is a diversity action involving the interpretation of a marine insurance contract issued to a California insured, California law and maritime principles govern the substance of the claims. *See Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1442-43 (2007); *New Hampshire Ins. Co. v. C'est Moi, Inc.*, 519 F.3d 937, 939 (9th Cir. 2008). *See also* Cal. Civ. Code § 1646 ("A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.").

### B. Promissory Fraud Cannot Be Based Upon a Mere Breach of Contract

The Third Cause of Action for "promissory fraud" fails because, as a matter of law, Counterclaimants have not and cannot plead facts establishing that, at the time the New Hampshire policy was issued, the company did not intend to cover a loss

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

that had not yet taken place. Counterclaimants' assertions are a baseless attempt to convert a simple breach of contract claim into one for fraud.

In diversity cases, the substantive elements of fraud are determined by state law. *See Moore v. Brewster*, 96 F.3d 1240, 1245-46 (9th Cir. 1996). Under California law, a cause of action for fraud requires the plaintiff to establish: (1) a knowingly false representation by the defendant, (2) made with intent to deceive or induce reliance by the plaintiff, (3) justifiable reliance by the plaintiff, and (4) resulting damages. *See Wilkins v. NBC*, 71 Cal. App. 4th 1066, 1081 (1999).

These elements, however, must be pled in accordance with Rule 9(b) of the Federal Rules of Civil Procedure, which requires that "the circumstances constituting fraud" be stated "with particularity." Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997)). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (quoting *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

In this case, Counterclaimants first allege that New Hampshire promised "in the Policies identified" that it would act in good faith, pay claims for losses to the Mi Barur, properly investigate all claims, act reasonably in evaluating claim, and not subjugate the insured's interests to its own. (Ex. C, p. 97, ¶ 88.) Counterclaimants contend that New Hampshire committed fraud because, at the time this statement was made, New Hampshire "never intended to perform as promised." (Ex. C, p. 98, ¶ 91.)

Counterclaimants' "promissory fraud" claim fails as a matter of law because an insured asserting a claim against an insurer for fraud in the inducement must plead facts showing that, at the time the promise was made, the insurer did not intend to keep its promise to perform. *See Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th 471, 481 (1996); *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153,

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

159 (1991). Simply alleging an original promise coupled with a subsequent failure to perform is insufficient to support a factual inference that the original promise was made without intent to perform. *Magpali,* 48 Cal. App. 4th at 481. *See also Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985) ("something more than nonperformance is required to prove the defendant's intent not to perform his promise"). As the court observed in *Price v. Highland Community Bank*, 722 F. Supp. 454, 459-60 (N.D. Ill. 1989), "[a] change of mind can be . . . a breach of contract, but it is not fraud."

The decision in *Smith v. Allstate Ins. Co.*, 160 F. Supp.2d 1150, 1152 (S.D. Cal. 2001), is directly on point. Like Counterclaimants, the insured in *Smith* alleged that the insurer, through its homeowners policy, agreed to indemnify the Smiths against fire damages to their home, these representations were made to induce the Smiths to enter into the policy, the insurer never intended to honor these representations and has not paid the claim. *Smith*, 160 F. Supp.2d at 1153. The court held that "[t]hese pleadings fail to specify facts from which the Court can infer that the alleged misrepresentations were actually false at the time they were made." *Id.* The court also found "specious" the insured's claim that promissory fraud can be based simply upon the insurer's failure to pay the claim:

> Such an assumption is unwarranted because it contradicts the heightened pleading requirements of Rule 9(b) and would allow "every breach of contract [to] support a claim of fraud so long as the plaintiff adds to his complaint a general allegations that the defendant never intended to keep her promise."

*Id*. at 1153-54 (quoting *Richardson v. Reliance Nat'l Indem. Co.*, 2000 U.S. Dist. LEXIS 2838, *14 (N.D. Cal. Mar. 9, 2000) (citations omitted)).[2]

---

[2] *See also Fanucchi & Limi Farms v. United Agric. Prods.*, 414 F.3d 1075 (9th Cir. 2005) (affirming dismissal of promissory fraud claims because "mere nonperformance is not enough to show intent to defraud"); *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992) (a lenient standard of pleading promissory fraud would permit "anyone with a breach of contract claim [to allege] tort damages by alleging that the promises broken were never intended to be performed.").

The fraud claim here is substantively identical to that addressed in *Smith*. Counterclaimants simply allege that New Hampshire committed fraud by issuing an insurance policy and failing to pay for the loss of the Mi Barur. Such bare-bones allegations fail to specify any facts indicating that the alleged statements were false at the time they were made. This conclusion is consistent with the fundamental principle that a complaint may demonstrate the false or misleading character of a statement by pointing to inconsistent contemporaneous statements made by the defendants. *Yourish v. California Amplifier*, 191 F.3d 983, 994 (9th Cir. 1999); *DeMarco v. DepoTech Corp.*, 149 F. Supp.2d 1212, 1223 (S.D. Cal. 2001). "A complaint may not, however, plead fraud by hindsight and simply 'point[] to later inconsistent statements or conditions.'" *DeMarco*, 149 F. Supp.2d at 1223 (quoting *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d at 1548).

In a failed attempt to salvage their promissory fraud claim, the counterclaim further alleges: "NHIC also promised and represented that [it] would pay the claims of single vessel corporations, claims on vessels spending most or all of the year trading in Mexican waters, and claims on vessels owned by citizens of Mexico." (Ex. C, p. 97, ¶ 88.) These allegations are insufficient because they fail to specify the precise nature of the misrepresentations, the identity of the alleged speaker, how the representations were communicated to them, when they were communicated, or where. Thus, Counterclaimants failed to plead with particularity the "who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106.[3]

**C. <u>The Negligent Misrepresentation Claim Fails as a Matter of Law</u>**

The negligent misrepresentation claim fails for the same reason as the fraud claim because there are no facts plead demonstrating inconsistent statements

---

[3] These allegations are also directly contradicted by the March 10, 2008 declination letter attached as Exhibit B to the counterclaim, which makes clear that coverage was denied because of the arson (Ex. C, pp. 346-347) and that New Hampshire merely "reserved rights" to assert a defense to coverage based upon the insured's "concealment or misrepresentation." (Ex. C, pp. 347-348.)



LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

contemporaneously made at the time of the issuance of the policy establishing that New Hampshire did not intend to honor its contract. The counterclaim also fails to plead all of the elements for such a cause of action.

The elements of a negligent misrepresentation claim are: "(1) a false statement of a material fact that the defendant honestly believes to be true, but made without reasonable grounds for such belief, (2) made with the intent to induce reliance, (3) reasonable reliance on the statement, and (4) damages." *Century Surety Co. v. Crosby Ins., Inc.*, 124 Cal. App. 4th 116, 129 (2004) (citing *Cicone v. URS Corp.*, 183 Cal. App. 3d 194, 208 (1986)). *See also* Cal. Civ. Code § 1710(2) (defining "deceit" to include "the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true").

As with their fraud claim, Counterclaimants contend that New Hampshire represented that it would honor the policy when it had no reasonable basis for believing these representations were true. (Ex. C, p. 100, ¶¶ 97, 98.) However, as set forth above, Counterclaimants do not allege any facts which would create even an inference that New Hampshire never intended to uphold the policy. Rather, Counterclaimants rely on the conclusory allegation that New Hampshire "failed to disclose its true business practices and position regarding Mexican owned single vessel corporations." (Ex. C, p. 100, ¶ 98.) There are simply no facts alleged showing statements contemporaneously made at the time of the issuance of the policy that support this contention.

In addition, Counterclaimants do not allege facts supporting the element of a cause of action for negligent misrepresentation that New Hampshire made a false statement of material fact, honestly believing it to be true, but without reasonable grounds for such belief. Rather, the counterclaim simply alleges that New Hampshire intentionally "failed to disclose its true business practices and position." (Ex. C, p. 100, ¶ 98.) The omission of this "essential element" renders the claim "fatally defective." *Century Surety*, 124 Cal. App. 4th at 129. A case directly on point is

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

*Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1332-33 (1986), where the court sustained a demurrer without leave to amend of a claim which failed to allege that false representations were made honestly, believing they were true, but having no reasonable ground for such belief. Counterclaimants' "negligent misrepresentation" claim fails for the same reason.

**D. <u>Counterclaimants' "Negligent Salvage" Cause of Action Cannot Survive Because The Claim is Based upon Breach of Contract, Not Tort</u>**

The Fourth Cause of Action based upon the "negligent salvaging" of the Mi Barur fails because it is nothing more than a repackaging of Counterclaimants' breach of contract claim in an futile attempt to recover tort damages.

The essential elements of a negligence claim are: (1) defendant's legal duty of care to plaintiff, (2) defendant's breach of that duty, (3) plaintiff's resulting injury, and (4) compensable damages. *Becker v. IRM Corp.*, 38 Cal. 3d 454, 471 (1985).

It is alleged that New Hampshire "undertook to salvage the yacht and to protect it until such time as they finished their survey and investigation of the fire " and "negligently carr[ied] out said salvage and fire investigation." (Ex. C, p. 102, ¶¶ 103, 104.) Quite simply, Counterclaimants allege that New Hampshire was guilty of negligent claim handling, *i.e.*, the company negligently handled the portion of the claim relating to the recovery and inspection of the Mi Barur.

Counterclaimants have not and cannot allege a "duty" independent of New Hampshire's contractual obligations under its insurance policy because a person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations. *Aas v. Superior Ct.*, 24 Cal. 4th 627, 643 (2000). To the contrary, recovery of tort damages has been limited to a few carefully delineated situations where "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999). A cause of action for negligent claim handling does not satisfy either of these criteria. *Benavides v. State Farm Gen. Ins.*

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

*Co.*, 136 Cal. App. 4th 1241, 1251-52 (2006). *See also Sanchez v. Lindsey Morton Claims Servs., Inc.*, 72 Cal. App. 4th 249, 254-55 (1999) ("negligence is not among the theories of recovery generally available against insurers").

In *Benavides*, *supra*, the court found that a cause of action for negligent claim handling, similar to that alleged in the present matter, cannot be sustained independent of a claim for breach of contract. *Benavides*, 136 Cal. App. 4th at 1252. In that case, a tenant sued her insurer following the denial of a claim for mold contamination in a condominium unit. *Id.* at 1245. Although the court ultimately held that the claim was not a covered loss, it considered whether a cause of action for negligent handling of an insurance claim could be sustained against the insurer. *Id.* at 1251-52. The court concluded that the tenant's negligence claim did not "fall within the circumstances identified by the California Supreme Court which allow a contract-based cause of action to be pursued as a tort claim," namely, the tenant's negligence claim was not based on a duty independent of the contract and the alleged conduct by the insurer was not intentional. *Id.* at 1252.

The Ninth Circuit has consistently held that "in California, 'negligence is not among the theories of recovery generally available against insurers.'" *Tento Int'l, Inc. v. State Farm Fire & Cas. Co.*, 222 F.3d 660, 664 (9th Cir. 2000) (quoting *Sanchez*, 72 Cal. App. 4th at 254-55). *See Everett Assocs. v. Transcontinental Ins. Co.*, 35 Fed. Appx. 450, 452-53 (9th Cir. 2002) ("We conclude that the district court correctly dismissed the separately pleaded negligence causes of action.").[4]

The court in *Everett Associates v. Transcontinental Insurance Co.*, 159 F. Supp. 2d 1196, 1204 (N.D. Cal. 2001), *aff'd in part*, 35 Fed. Appx. 450 (9th Cir. 2002), recognized that a "negligence" theory would improperly expand an insurer's

---

[4] *See also Caso v. Hartford Cas. Ins. Co.*, 2008 U.S. Dist. LEXIS 36428, *25-26 (E.D. Cal. May 2, 2008) ("plaintiffs cannot sustain a cause of action for negligent handling of an insurance claim"); *Carillo v. Nationwide Mut. Fire Ins. Co.*, 2007 U.S. Dist. LEXIS 47919, *6-7 (N.D. Cal. June 25, 2007) (leave to amend denied because insured failed to rebut insurer's arguments that a negligence action is not available against an insurer).

liability under California law:

> Plaintiffs urge the Court to rely on fundamental tort principles to recognize its negligence claim. The Court finds doing so would be an expansion unwarranted by California case law and declines to do so.

*Id.* at 1204.

The California courts have made clear that the only tort remedy available for the breach of an insurance contract is "bad faith," a claim that requires more than a showing of mere "negligence." As the Ninth Circuit observed in *Guebara v. Allstate Insurance Co.*, 237 F.3d 987, 995 (9th Cir. 2001), "[a]n insurer may breach the covenant of good faith and fair dealing when it fails to properly investigate its insured's claim." To demonstrate bad faith, the insured must establish, among other things, that the insurer withheld policy benefits unreasonably or without proper cause. *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990). "[M]ere negligence is not enough to constitute unreasonable behavior for the purpose of establishing a breach of the implied covenant of good faith and fair dealing in an insurance case." *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1166 (9th Cir. 1995).

Counterclaimants cannot avoid the stringent requirement for proving a cause of action for bad faith by simply relying upon a "negligence" theory. As stated by a leading treatise on California insurance law:

> Delay or failure to pay policy benefits may be actionable as a breach of contract or bad faith, not negligence.

Croskey, *et al.*, *Cal. Practice Guide, Ins. Lit.* § 11:205 (The Rutter Group 2007).[5]

Counterclaimants' "negligent salvage" claim is simply an ill-conceived attempt to plead a cause of action for negligent claim handling. The foregoing authorities establish that no such cause of action exists under California law.

---

[5] *See also Continental Ins. Co. v. Muradyan*, 2003 U.S. Dist. LEXIS 18643, *15 (C.D. Cal. 2003) ("Because the standard for tort liability against an insurance company is bad faith, not negligence, courts have found claims for negligence against insurers to be improper.").

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

**E. The Claims by the Farells are Factually and Legally Flawed Because They Are Not Insureds Under the New Hampshire Policy**

A review of the New Hampshire policy and relevant case law belies the Farells' assertion that they are "insureds" under the policy. Nowhere in the policy are the Farells included as named insureds, additional insureds, or beneficiaries under the policy. (Ex. A, pp. 16-45.) Because the Farells are strangers to the contract and do not have standing to assert any claims under the New Hampshire policy, the First through Seventh Causes of Action fail as a matter of law.

**1. The Terms of the Policy Take Precedence Over Conclusory Allegations in the Counterclaim**

The Court may consider the New Hampshire policy in determining the Farells' claim that they are "insureds" because a document attached or referenced in a pleading may be considered in its entirety when deciding a motion to dismiss. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996). "[W]hen a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*." *Thompson v. Illinois Dept. of Prof. Reg*, 300 F.3d 750, 754 (7th Cir. 2002) (emphasis in original; quotations omitted). Thus, the New Hampshire policy language prevails over Counterclaimants' conclusory allegations.

**2. Only Insureds Under the Policy May Assert a Cause of Action Against New Hampshire**

The Counterclaimants have not and cannot identify policy language establishing any rights under the policy belonging to the Farells.

**a. As Shareholders in Mi Barur, Inc., the Farells Lack Standing to Sue the Corporation's Insurer**

The Farells admit that they are the sole shareholders in the corporate insured, Mi Barur, Inc. (Ex. C, p. 61, ¶¶ 2, 3.) Under California law, shareholders lack standing to assert a claim against the corporation's insurer because there is no privity of contract. *See Seretti v. Superior Nat'l Ins. Co.*, 71 Cal. App. 4th 920, 929, 930-31

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

(1999) ("[p]rivity of contract with the insurer is essential to an implied covenant action against the insurer"). Absent a showing by the shareholder that they are a named insured, additional insured, or a beneficiary under the policy, their claims against the insurer fail as a matter of law. *C & H Foods Co. v. Hartford Ins. Co.*, 163 Cal. App. 3d 1055, 1068 (1984). *See also Tan Jay Int'l. v. Canadian Indem. Co.*, 198 Cal. App. 3d 695, 706-07 (1988) ("shareholder may not, as a matter of law, personally recover emotional distress damages for injury to the corporation in which he holds shares" unless included as an insured under the policy).

In order to gain tax and other financial benefits, the Farells chose (on advice of their attorneys) to hold ownership of the Mi Barur through a corporation. (Ex. C, p. 197, ¶ 9; p. 200, ¶¶ 4, 6.) The Farells enjoyed the benefits of that decision and must also live with the consequences.

**b. <u>The Farells Are Not Third-Party Beneficiaries</u>**

The Farells also lack standing to sue as third-party beneficiaries under the policy because they have not and cannot identify policy language indicating that they fall within any class of persons who are entitled to benefits under the policy. *See Hatchwell v. Blue Shield of Cal.*, 198 Cal. App. 3d 1027, 1034 (1988) (non-party to insurance contract may sue insurer only if entitled to benefits under the contract).

The Farells allege that, as shareholders of Mi Barur, Inc., they are the only individuals who would receive policy benefits and, therefore, are the intended beneficiaries. (Ex. C, pp. 61-62, ¶ 4.) Such a claim is insufficient because the simple fact that "the contract, if carried out to its terms, would inure to the third party's benefit is insufficient to entitle him or her to demand enforcement," even if the third-party has paid for the policy. *Jones v. Aetna Cas. & Sur. Co.*, 26 Cal. App. 4th 1717, 1724 (1994) (commercial lessee who was required by terms of lease to pay the cost of rental income insurance policy maintained by lessor had no standing as third-party beneficiary to sue insurer for breach of the covenant of good faith and fair dealing). *See also InfiNet Mktg. Serv., Inc. v. American Motorist Ins. Co.*, 150 Cal. App. 4th

168, 181 (2007) ("That InfiNet would derive a tangential benefit from a finding there is coverage for third parties does not confer upon it standing to enforce the policy to which it is a complete stranger.").

The Farells' are not third-party beneficiaries under the New Hampshire policy and, therefore, lack standing to assert any claims under the policy.

**c. The Farells Do Not Qualify as "Insureds"**

The Farells claim that they somehow fit the definition of an "insured" under the policy is belied by the clear and explicit policy language.

The Insuring Agreement provides in part: "This **policy** is a legal contract between **you** and **us**." (Ex. A, p. 19, ¶ 1(A).) (emphasis in original). The policy defines "you" and "your" as follows:

> You and your means:
>
> A. The person or organization named as the insured on the enclosed Declarations;
>
> B. Members of the immediate family of the insured who live in the same household;
>
> C. Anyone else operating the insured vessel with the prior express permission of the named insured, as long as the actual use is within the scope of such permission and for private pleasure use only; or
>
> D. A captain or crew member who works on your yacht. You and your does not include, however, anyone operating or working for a marina, yacht club, boat repair yard, or similar business and who is not in your employ.

(Ex. A, p. 19, ¶ 29.)[6]

The Farells assertion that they are "insureds" under Paragraph "C", because they were "operating" the vessel, is misplaced because, at the time of the fire, the yacht was tied to the pier and with no one on board and, therefore, not being

---

[6] The Farells do not and cannot rely on Paragraph "A" of the "you or your" definition because "Mi Barur, Inc.," not the Farells, is the "named insured" on the policy. (Ex. A, p. 16; Ex. C, p. 62:1-2.) Paragraph "B" only applies if the "Named Insured" is an individual, not a corporation. Paragraph "D" does not apply because the counterclaim alleges that the Farells were the "employers of the crew," not crew members. (Ex. C, p. 62:8.)



LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

"operated" by anyone. (Ex. C, p. 75, ¶ 38.)

When construed in the abstract, the word "operate" has two principle meanings involving either physical control or, as the Farells contend, the concept of direction and control. *See Orth v. Universal Underwriters Ins. Co.*, 284 F.2d 857, 859 (9th Cir. 1960). However, it is a fundamental principle of policy interpretation that "*language in a contract* must be construed in the context of that instrument as a whole, and in the circumstances of that case, and *cannot be found to be ambiguous in the abstract*." *Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1265 (1992) (emphasis in original). The fact that a term is not defined in the policies or that language could be more explicit does not make it ambiguous. *See Bay Cities Paving & Grading, Inc. v. Lawyer's Mut. Ins. Co.*, 5 Cal. 4th 854, 866 (1997); *California Cas. Ins. Co. v. Northland Ins. Co.*, 48 Cal. App. 4th 1682, 1694 (1993). Nor does ambiguity arise simply because there is "[d]isagreement concerning the meaning of a phrase," or "the fact that a word or phrase isolated from its context is susceptible of more than one meaning." *Castro v. Fireman's Fund Amer. Life Ins. Co.*, 206 Cal. App. 3d 1114, 1120 (1988).

When a word has multiple meanings, a court must consider the context of the language and construe the document as a whole in accordance with the basic rules of contract interpretation. *See, e.g., Scott v. Continental Ins. Co.*, 44 Cal. App. 4th 24, 30 n.4 (1996); *ACL Technologies, Inc. v. Northbrook*, 17 Cal. App. 4th 1773, 1783 (1993). In doing so, the court must consider "the nature and kinds of risks covered by the policy." *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 19 (1995). *See also Stanford Ranch v. Maryland Cas. Co.*, 89 F.3d 618, 624 (9th Cir. 1996).

Here, the "nature and kinds of risks covered" are maritime. In the maritime context, California Harbor & Navigation Code section 651(o), defines "operator" to mean "the person on board who is steering the vessel while underway." Such an interpretation is consistent with the language of paragraph C, which describes the

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

relationship between the person "operating" vessel and the "actual use" of the vessel.[7] Other federal courts have looked to the forum state's navigation code to determine who was the operator of a vessel for insurance purposes. *See, e.g., National-Ben Franklin Ins. Co. v. Levernier*, 280 F. Supp. 2d 851, 863-64 (E.D. Wis. 2003). Such a conclusion is also consistent with the holding in *Reliance Ins. Co. v. Alan*, 222 Cal. App. 3d 702, 707-08 (1990), that a vessel tied to the dock at a marina – like the Mi Barur – is not being "operated" within the meaning of a policy providing coverage for liability arising from "ownership, operation, or maintenance."

The Ninth Circuit gave a similar interpretation to the term "operated" in an automobile policy. In *Orth v. Universal Underwriters Insurance Co.*, 284 F.2d 857, 859 (9th Cir. 1960), the policy defined the "insured" in pertinent part as: "any other person or organization legally responsible for the use thereof only while such automobile is operated by the named insured . . . ." *Id.* at 861 n.1. The court found that "the word 'operated' is employed to describe a relationship between an individual and an automobile" and, therefore, "[w]hen used in this context the word 'operate' means 'drive.'" *Id.* at 859-60.

In the context of the present loss, any interpretation finding that the Farells are insureds is unreasonable because it is Mi Barur, Inc., not the Farells which suffered the loss and it is the corporation that would be entitled to any recovery. In essence, the Farells are seeking to be rewarded with tort damages for a loss suffered by their corporation. Such a result is inconsistent with the mutual intent of the parties to the policy, which is to compensate the named insured for the loss of the yacht.

Counterclaimants' allegation that New Hampshire may have referred to the Farells as insureds in claims correspondence is irrelevant to this analysis because,

---

[7] Similarly, California Insurance Code § 11580.06.(f), applicable to motor vehicles, provides: "The term 'operated by' or 'when operating' shall be conclusively presumed to describe the conduct of the person sitting immediately behind the steering controls of the motor vehicle. The person shall be conclusively presumed to be the sole operator of the motor vehicle."

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

under California law, interpretation of an insurance policy is a legal matter for the court. *USF Ins. Co. v. Clarendon Am. Ins. Co.*, 452 F. Supp.2d 972, 985-86 (C.D. Cal. 2006) (citing *Waller*, 11 Cal. 4th at 18). *See also Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 5 (1996) ("interpretation of an insurance policy is primarily a judicial function"). The opinions of an insurance company's claims personnel are irrelevant to the court's analysis. As the court observed in *Quan v. Truck Insurance Exchange*, 67 Cal. App. 4th 583, 602 (1998) "[t]he insureds in this case improperly seek to substitute insurance company employee musings concerning the defense duty decision for actual facts that might demonstrate the potential for covered liability." The sole issue is whether the "facts" of the claim give rise to coverage under the policy. *Id.*

Based on the foregoing, the Farells do not qualify as insureds because they were not "operating" the Mi Barur at the time of the fire.

**F. <u>The Libel and Slander Claims Must be Dismissed</u>**

The libel and slander claims asserted by the Farells, as individuals, in the Eighth and Ninth Causes of Action fail because either (1) the "common interest privilege" codified in Civil Code § 47 immunizes from liability non-malicious statements among parties having a common interest regarding insurance for the loss of the Mi Barur, (2) the statements are not defamatory, or, (3) the alleged statements do not defame the Farells because they are not "of and concerning" either of them.

**1. <u>The Standard</u>**

The determination of whether a statement is defamatory is a question of law in the first instance. *Scott v. McDonnell Douglas Corp.*, 37 Cal. App. 3d 277, 289 (1974). The relevant inquiry for the court is whether the statement could reasonably be considered defamatory. *Id.* The pleading standard for defamation is "more stringent than that applicable to most other substantive claims because of the historically unfavored nature of this type of action, the First Amendment implications of many of these cases, and the desire to discourage what some believe to be all too

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

frequently vexatious litigation." 5 Wright & Miller, *Fed. Prac. & Proc., Civil 3d* § 1245 (2008).

A defamatory statement under California law consists of libel or slander. Cal. Civ. Code § 44. Libel is defined by California Civil Code § 45 as follows:

> Libel is a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

Slander is defined by California Civil Code § 46 in pertinent part as:

> Slander is a false and unprivileged publication, orally uttered and also communications by radio or any mechanical or other means which:
>
> 1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;
>
> . . . .
>
> 3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;
>
> . . . .
>
> 5. Which, by natural consequence, causes actual damage.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

### 2. <u>The Alleged Statements Are Privileged Because They Are Between Persons Who Are Interested in the Loss of the Mi Barur</u>

A statement is not defamatory when it is privileged. California Civil Code § 47(c) sets forth the "common interest" privilege applicable to defamation claims:

> A privileged publication or broadcast is one made:
>
> . . . .
>
> (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested . . . .

"Under the 'common interest privilege' . . . a defendant who makes a statement to others on a matter of common interest is immunized from liability for defamation so long as the statement is made 'without malice.'" *Lundquist v. Reusser*, 7 Cal. 4th 1193, 1196 (1994).

Whether parties share a "common interest" is broadly construed:

> The word "interest" as used in the cases, is not used in any technical sense. It is used in the broadest popular sense, as when we say that a man is "interested" in knowing a fact– not interested in it as a matter of gossip or curiosity, but as a matter of substance apart from its mere quality as news.

*Institute of Athletic Motivation v. University of Ill.*, 114 Cal. App. 3d 1, 11 (1980).

The Farells allege that they were defamed by:

1. Statements regarding the arson contained in the March 10, 2008 letter denying coverage for the loss of the Mi Barur that was sent by New Hampshire to Michael Hallmark, Mi Barur, Inc.'s president. (Ex. C, pp. 105:3-10, 346-349.)
2. Statements contained in the March 10, 2008 declination letter regarding the insured's omissions concerning the incorporation of Mi Barur, Inc. (Ex. C, p. 105:1-3.)
3. A statement regarding the loss allegedly made to Henry Medina, Mi Barur, Inc.'s insurance broker, by Todd Schwede, an independent Marine Surveyor hired by New Hampshire to investigate the loss and to quantify damages. (Ex. C., p. 106, ¶ 122; p. 204, ¶ 14.)

Mr. Hallmark, Mr. Medina, Mr. Schwede and New Hampshire all have an interest in issues relating to insurance coverage for the loss of the Mi Barur. Thus, the statements are privileged unless the Farells can meet their burden of affirmatively pleading malice. *See Lundquist*, 7 Cal. 4th at 1209-10 ("where the complaint discloses a qualified privilege, no malice is presumed and in order to state a cause of action the pleading must contain affirmative allegations of malice in fact").

The requisite malice to defeat a privilege under Section 47(c) is "'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights . . . ." *Sanborn v. Chronicle Pub. Co.*, 18

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

Cal. 3d 406, 413 (1976). *See also Lundquist*, 7 Cal. 4th at 1204, 1213-14 (malice is "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person"). Malice requires more than mere "negligence" or "sloppiness." *Bierbower v. FHP, Inc.*, 70 Cal. App. 4th 1, 9 (1999).

Malice cannot be inferred from the communication itself. Cal. Civ. Code § 48. Rather, the Farells must plead specific facts beyond conclusory allegations of malice. *Kacludis v. GTE Sprint Commc'ns Corp.*, 806 F. Supp. 866, 872 (N.D. Cal. 1992). *See also Robomatic, Inc. v. Vetco Offshore*, 225 Cal. App. 3d 270, 276, (1990) ("A general allegation of malice will not suffice; plaintiff must allege detailed facts showing defendant's ill will towards him.").

The Farells' counterclaim contains two separate paragraphs setting forth conclusory allegations that the allegedly defamatory statements were made "with actual malice and ill will" and "were the result of racist stereo-typing." (Ex. C, p. 105, ¶ 120, p. 107, ¶ 127.) These paragraphs cannot overcome the qualified privilege of Section 47(c) because they contain no "detailed" facts – independent of the statements themselves – showing "hatred," "ill will," or "reckless disregard." *See Kacludis*, 806 F. Supp. at 872; *Lundquist*, 7 Cal. 4th at 1213-14.

Nor will the Farells be able to plead "actual malice" because, as a matter of law, an insurer acts in "good faith" when it relies on an expert's advice in reaching a coverage determination, even if there is a "genuine dispute" as to coverage for the loss. *See Adams v. Allstate Ins. Co.*, 187 F. Supp. 2d 1207, 1215 (C.D. Cal. 2002). The "genuine dispute" doctrine applies even if the insured's expert presents a contrary. *Id. See also Fraley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282, 1293 (2000) (it is reasonable for insurer to rely on the report and findings of its own expert over those offered by an insured's expert). This is because an insurer "may give its own interests consideration equal to that it gives the interests of its insured[s]." *Fraley*, 81 Cal. App. 4th at 1293 (citing *Love*, 221 Cal. App. 3d at 1147). Counterclaimants' concession that New Hampshire relied upon expert advice in denying coverage based

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

upon arson defeats any claim of "malice."

The libel and slander claims fail as a matter of law because the Farells have not and cannot overcome the "common interest" privilege.

**3. The Alleged Statements Do Not Defame the Farells**

The libel and slander claims also fail as a matter of law because the statements relied on by Counterclaimants are not defamatory.

**a. There is No Statement by New Hampshire That Documentation for the Mi Barur Was "Illegal" as Alleged in the Eighth Cause of Action**

The counterclaim wrongly asserts that New Hampshire "falsely accuse[s] Mr. and Mrs. Farell, expressly of committing a felony by conspiring to violate U.S. law by illegally owning a beneficial interest in a U.S. flag vessel." (Ex. C, p. 105, ¶ 117.) No such statement was made by New Hampshire. Rather, a review of the actual declination letter establishes that New Hampshire simply "reserve[d] rights" to disclaim coverage because the insured failed to disclose details regarding the Farells involvement in the corporation. (Ex. C, pp. 347-348.) New Hampshire did so because the failure to disclose information relevant to the insured risk violates the language of the policy (Ex. A, p. 20, ¶ J), and the longstanding doctrine of *uberrimae fidei*, which "requires a marine insurance applicant even if not asked, to reveal every fact within his/her knowledge that is material to the risk." *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 418, n.1 (9th Cir. 1998).

The declination letter attached to the counterclaim directly contradicts any assertion that New Hampshire accused the Farells of engaging in "illegal" conduct. The Farells' "illegality" claim is also contradicted by the opinion of their counsel, attached as Exhibit A-12 to the counterclaim, that "I can say without a doubt, that a non-U.S. citizen holding of 100% of the stock in such a U.S. single vessel corporation is completely legal and is in fact specifically approved by U.S. federal statute." (Ex. C, p. 200, ¶ 5.) New Hampshire could not have defamed the Farells by accusing them

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

of engaging in conduct which their attorney opined was "completely legal." The contents of the declination letter and counsel's declaration prevails over contrary allegations in the counterclaim. *See Thompson,* 300 F.3d at 754 (emphasis in original) ("[W]hen a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*.").

**b. Statements Regarding the Arson and the Comment by Mr. Schwede are Not "Of or Concerning" the Farells**

In defamation actions, the First Amendment requires that the statement on which the claim is based "specifically refer to, or be 'of and concerning,' the plaintiff in some way." *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042 (1986). *See also Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1404 (1999) (plaintiff "cannot constitutionally establish liability unless he proves that the contested statements are 'of and concerning,' him either by name or by 'clear implication.'"). "The 'of and concerning' or specific reference requirement limits the right of action for injurious falsehood, granting it to those who are the direct object of criticism and denying it to those who merely complain of nonspecific statements that they believe cause them some hurt." *Blatty*, 42 Cal. 3d at 1044.

Neither Mr. Farell nor Mrs. Farell have or can establish that the allegedly defamatory statements are "of and concerning" themselves.

**(1). The Declination Letter Submitted in Support of the Eighth Cause of Action for Slander Contains No Statements Attributing the Arson to Either of the Farells**

There are no statements contained in the March 10, 2008 declination letter "of and concerning" Mr. Farell or Mrs. Farell regarding the arson.

Although the Farells allege by innuendo that the letter "falsely accuse[s] Mr. and Mrs. Farell of intentionally setting fire or conspiring with others to set fire to their yacht MI BARUR in an illegal scheme to collect insurance proceeds," no such statements are contained in or can be inferred from the March 10th letter. (Ex. C, p.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

105, ¶ 109; pp. 346-349.) As to the cause of the fire on the Mi Barur and the reasons for New Hampshire's denial of the claim, the letter simply states:

- "The evidence discovered in the investigation supports the conclusion that the fire was started with the significant involvement of Captain Rello." (Ex. C, p. 346.)
- "Underwriters authorized release of the fire investigation report, which was provided to you. The report concludes that the fire was intentionally set on the Captain's bunk." (Ex. C, p. 346.)
- "The fire investigator reviewed other possible causes, such as an accidental cause (including smoking) and electrical causes, but ruled them out." (Ex. C, p. 346.)
- "Underwriters could find no evidence to suggest that anyone other than the Captain set the fire." (Ex. C, p. 346.)
- "The MI BARUR was located at the end of a dock behind a locked security gate with video surveillance . . . . While we must question why the Marina would not turn over the tapes, the report that there was nothing out of the ordinary suggests that no other person was involved in setting the fire." (Ex. C, p. 346.)
- "Captain Rello was the last person leaving the boat before the fire started." (Ex. C, p. 346.)
- "Underwriters have not determined if others were involved in planning the fire. It is not necessary to the current coverage decision, but underwriters reserve the right to further investigate others possibly involved and assert any related defenses." (Ex. C, p. 347.)
- "The policy also includes the Captain within the definition of "YOU," and may thereby make his conduct the conduct of the named insured [Mi Barur, Inc.]. Any involvement of an insured in the fire would subject the claim to an arson defense to a fire loss." (Ex. C, p. 347.)

The Eighth Cause of Action should be dismissed because the declination letter contains no reference to any involvement with the arson by either Mr. or Mrs. Farell or any basis to infer that New Hampshire attributed the arson to either of them.

(2). **The Statement Supporting the Ninth Cause of Action For Slander Does Not Reference Either of the Farells**

The Ninth Cause of Action is based upon an alleged statement that is not "of and concerning" Mr. or Mrs. Farell. Rather, the Farells' slander claim is based upon a hearsay statement contained in an e-mail by the insured's broker, Henry Medina, allegedly documenting the following statement by independent marine surveyor Todd Schwede: "New policy, less than 30 days old, total loss, Mexican, he did it." (Ex. C, p. 106, ¶ 122.) According to the counterclaim, this statement is slanderous because it falsely accuses Mr. and Mrs. Farell of "setting fire or conspiring with others to set fire to their yacht MI BARUR in an illegal scheme to collect insurance proceeds." (Ex. C, p. 106, ¶ 124 .)

While New Hampshire disputes that the quotation accurately documents what was said between Mr. Schwede and Mr. Medina or that Mr. Schwede is an agent of the company, even if true, it is insufficient to support a slander cause of action by the Farells because there is no specific reference to either Mr. Farell or Mrs. Farell and the statement cannot be attributed to either of them by "clear implication."

(a). **The Statement Refers to "He," Not "She" or Mrs. Farell**

The statement clearly is not "of and concerning" Mrs. Farell because it refers to "he," not "she" or Mrs. Farell. Mrs. Farell's slander claim is, therefore, baseless.

(b). **The Statement is Not Sufficiently Specific as to Who it Refers**

The statement indicates that the person who did "it" was of "Mexican" origin. When an allegedly defamatory statement refers to a "group" of people, "where the group is large – in general, any group numbering over twenty-five members – the

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

courts in California and other states have consistently held that plaintiffs cannot show that the statements were 'of and concerning them.'" *Blatty*, 42 Cal. 3d at 1046 (citations omitted). Thus, as a matter of law, simply because Mr. and Mrs. Farell are of Mexican origin is insufficient to establish that either was the subject of the statement.

The Farells' slander claim is also belied by the March 10, 2008 declination letter, attached to the Counterclaim, which establishes New Hampshire's subjective belief that the person involved with the arson was Captain Rello, not the Farells. (Ex. C, pp. 346-347.) The Farells' defamation claims fail as a matter of law because statements contained in documents attached to the counterclaim prevail over any conclusory allegations in the pleadings. *See Thompson,* 300 F.3d at 754 (emphasis in original) ("[W]hen a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*.").

The Farells have not and cannot plead a cause of action for slander based upon an assertion that New Hampshire accused either Mr. Farell or Mrs. Farell of arson.

## V. CONCLUSION

The Third, Fourth, Fifth, Eighth and Ninth Causes of Action to the counterclaim lack any factual or legal support. In addition, the claims asserted individually by Arsenio Farell and Norma Farell in the First through Seventh Causes of Action lack merit because they are not insureds under the New Hampshire Policy. Accordingly, New Hampshire's motion to dismiss should be granted.

DATED: August 14, 2008 LEWIS BRISBOIS BISGAARD & SMITH LLP

By /s/ Stephen V. Kovarik
Rebecca R. Weinreich
Stephen V. Kovarik
Attorneys for Plaintiff and Counterdefendant
New Hampshire Insurance Company